UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>      vs.<br><br>SALEEM M. KHAN,<br><br>            Defendant | Case No.: 12-CR-0860 YGR<br><br>**ORDER GRANTING PLAINTIFF UNITED STATES' MOTION FOR RESTITUTION** |

Pending before this Court is Plaintiff United States' Motion for Restitution, wherein it seeks an order requiring Defendant Saleem M. Khan ("Khan") to pay restitution to E-Trade Bank in an amount of no less than $313,665.98. (Dkt. 58.)  In opposition to the Government's Motion and any order awarding restitution, Defendant Khan has filed a Response to Motion for Restitution for Victim E-Trade Bank. ("Oppo."; Dkt. 60.)  Thereafter, the Government filed a Reply in Support of Motion for Restitution, reiterating its position and requesting, in the alternative, an evidentiary hearing during which it may call live witnesses to substantiate further the loss amount. (Dkt. 62.)

The instant motion follows this Court's March 13, 2014 sentencing of Mr. Khan to a 21-month custodial sentence after he entered an "open" guilty plea to one count of bank fraud in violation of Title 18 U.S.C § 1344 and one count of making false statements to a financial institution in violation of Title 18 U.S.C § 1014.  For the reasons set forth below, the Court **FINDS** that the Government has met its burden of proof regarding the restitution due to the victim of the bank fraud, and consequently, that an evidentiary hearing is not warranted.  Accordingly, the motion is **GRANTED.**

## I.      BACKGROUND

Based upon the comprehensive factual background set forth in the Presentence Investigation Report ("PSR"; Dkt. 36) to which no objections were filed (*id.* at 17), and the Government's proffered evidence, the Court makes the following findings of fact and deems them relevant to the appropriate calculation of restitution:

On September 2, 2005, Khan obtained a home equity line of credit from E-Loan with a credit limit of $345,000 secured by his residence on Appian Way ("the HELOC").  (Dkt. 56, Exh. 1. (Bates US 000746, -775, -776, & -779).)  Khan initially drew $60,000 thereon.  E-Loan sold the HELOC to E-Trade Bank on September 25, 2005 for the face value of the loan plus a premium of 4.38% (or $2,628) for a total amount of $62,628.  (*Id.*, Exh. 2, ¶ 3.)  Thereafter E-Trade hired PNC Bank to service the HELOC.

Bank servicing records indicate that Khan made additional draws against the HELOC.  The December 16, 2005 statement shows an advance of $285,000 which was then paid off by April 2007.  (*Id.*, Exhs. 4 and 5.)  Again, additional draws were taken on the HELOC resulting in a balance of $346,497.80 by March of 2008.  (*Id.*, Exh. 6.)  While Khan made regular payments on the HELOC, the balance never fell below $346,000.

Notably, in January 2010, Khan made his last payment on the HELOC when the outstanding principal balance on the HELOC was approximately $344,854.32.  (Doc. 40, Exh. 3.)  The Court finds that this is the point at which the fraudulent intent was made manifest and the point at which his illegal scheme commenced.  In January 2010, Khan intentionally failed to make any further payments on the HELOC, thereby sending the HELOC into default status.  Given his significant professional knowledge, acumen, and expertise in real estate transactions and markets, Khan understood that a few months of default status would be required before his scheme could come to fruition.

According to a banking document provided by Khan, a "Pre-Foreclosure Equity Analysis" of the Appian Way property was conducted in early June 2010, showing an "Original Appraised Value"

United States District Court
Northern District of California

United States District Court
Northern District of California

of $775,000 and a "Current Value" of $449,900, which when adjusted for costs and the superior lien left "Available for CLC" the amount of $73,949.38.[1]  (Dkt. 39-1.)

Thereafter, and in furtherance of his scheme, on July 13, 2010, Khan falsely stated in a telephone call with a PNC representative that he had defaulted on payments on the HELOC because he had been laid off from his job for 14 months.  In truth, Khan had been continuously employed since July 1995 and had been working as a consultant for Kaiser Permanente since December 2008. On July 29, 2009, Khan had been hired as a full-time employee of Kaiser Permanente, with a bi-weekly net salary of approximately $3,190 as of January 2011.

Based upon Khan's representations concerning the status of his HELOC loan, on October 29, 2010, PNC charged off the HELOC with E-Trade's concurrence.  Had Khan not engaged in the conduct set forth above and continued remit payments on his loan as he had done prior to January 2010, the charge off would not have occurred.  Khan waited until this point to advise a default specialist in PNC's recovery department that he was in financial hardship and wanted to settle the HELOC.  (Dkt. 36, ¶ 11.)  Despite the representation, Khan's personal "OptionsHouse" accounts and another, which he opened in his brother-in-law's name to hide his trading gains from creditors, showed a combined balance of $2,737,110.04 as of December 31, 2010 (and $2,301,638.03 as of December 31, 2011).  (Dkt. 63.)

On January 13, 2011, in response to a request from the PNC default specialist, Khan sent an e-mail from the Northern District of California to the default specialist in Pennsylvania, which included attached documents supporting his offer to settle the HELOC for $45,000.  To support his offer, Khan provided PNC with a so-called hardship letter in which Khan falsely stated that he had lost his job at the end of 2007 and was not able to secure a stable job until July 2010.  Next, Khan provided altered pay statements, falsely indicating that he was employed by AB Star Group, from which he purportedly received a bi-weekly net salary of approximately $1,900.  He obtained this paystub by having his nephew Kamran Khan "photoshop" false information onto the submitted paystub.  Finally, Khan submitted an income and expense statement falsely listing a monthly income

---

[1] PNC's recovery department operated as a division of PNC known as CLC Consumer Services.

of $4,117. Nowhere did Khan reference the fact that he had earned $870,000 by buying and selling options and by conducting other transactions through brokerage accounts between April 2010 and January 2011. Based upon the default posture and Khan's false representations, E-Trade (through PNC) accepted Khan's offer of $45,000 and closed out the HELOC.

In advance of sentencing, the defendant admitted in writing as follows (in pertinent part): "I illegally settled my HELOC with the bank to benefit myself in the amount of $299,850." (Dkt. 36, ¶ 18.)

## II.    LEGAL STANDARD

The Mandatory Victim Restitution Act ("MVRA") makes restitution to victims mandatory for specified crimes, including "an offense against property" and "any offense committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1) & (c)(2). Courts are required to "order restitution to each victim in the full amount of each victim's losses as determined by the court." 18 U.S.C. § 3664(f)(1)(A). The MVRA provides that "[t]he burden of demonstrating the amount of the loss sustained by a victim . . . shall be on the attorney for the Government" and that "[a]ny dispute . . . shall be resolved by the court by the preponderance of the evidence." 18 U.S.C. § 3664(e).

Under Ninth Circuit precedent, "[d]istrict courts possess a great deal of flexibility in applying the MVRA to unique factual circumstances and conducting the calculation required by § 3663A(b)(1)(B)." *United States v. Yeung*, 672 F.3d 594, 606 (9th Cir. 2012). "The district court is not required to make explicit findings to justify its restitution order." *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008); *but see id.* (noting that specific findings of fact may sometimes be necessary when there is a dispute about the proper amount of restitution). In addition, the MVRA provides that a presentence report ("PSR") should contain all of the "information sufficient for the court to exercise its discretion in fashioning a restitution order." 18 U.S.C. § 3664(a).

Defendant does not dispute the standard, he merely relies on *United States v. Herndon*, 982 F.2d 1411, 1421 (10th Cir. 1992) to argue that "a restitution order entered without proof of loss is clearly erroneous." (Oppo. at 2:21-22.) While that basic proposition is not in debate, the case itself is not apt or controlling. There, the Circuit Court assessed whether restitution was appropriate

without evidence that defendant's conduct itself "resulted in a loss that would not have otherwise occurred." *Id.* In *Herndon*, the defendant was found guilty of two counts of altering and removing VINs, or vehicle identification numbers, from vehicles. *Id.* at 1413, 1416. With respect to the forfeiture count, the district court ordered restitution to the owner and insurance company of the vehicle identified in count one resulting from the theft of the vehicle. *Id.* at 1421. The Circuit Court reversed on this point because the victims would have suffered the loss of the theft regardless of the VIN alterations. *Id.* at 1422. The case is not instructive because here the fraudulent conduct at issue directly resulted in the victim's loss.

**IV. ANALYSIS**

The government seeks a restitution order in the amount of no less than $313,665.98, as calculated below (*see* Dkt. 40-3):

| | |
|---|---|
| Outstanding Principal Balance as of 01/2010: | $344,854.32 |
| Plus Accrued Interest from 01/2011: | $ 12,947.52 |
| Plus Costs as of 01/2011: | $     846.14 |
| Less Payment by Khan 02/2011: | $  45,000.00 |
| **TOTAL** | **$313,665.98** |

The evidence supporting the request includes (i) Declaration of Darlene Davis, an employee of CLC Consumer Services (Dkt. 42); (ii) bank records and statements for the HELOC at issue (Dkt. 40-1 through 4, 56-1, 56-4 through 6); (iii) Affidavit of Trina Arzaga, a Director of the Credit and Risk department of E-Trade (Dkt. 56-2); (iv) Affidavit of Daniel Rosman, a portfolio manager of E-Trade (Dkt. 56-3); (v) Declaration of Albert A. Fontana, Special Agent with the Federal Bureau of Investigation (Dkt. 63); (vi) the investigation set forth in the PSR; and (vii) the defendant's own admissions.

The defendant's 8-page opposition to the motion is fundamentally premised on the argument that the restitution should be calculated at a time *other than* when the scheme began after his last payment in January 2010. First, Khan argues that the amount should be calculated to be "somewhere between $0 and $73,949.38...depending upon anticipated expenses relating to the foreclosure and disposition of property, and the possibility of pursuing a deficiency judgment against

1    Khan" which was the "pre-foreclosure" value assessed as of the summer of 2010.  (Oppo. at 4:18-

2    21.)  Alternatively, Khan posits that because the property value was predicted to be even less in the

3    context of a "short sell" in January 2011, there was no real loss, but rather the payment of "$45,000

4    was actually an unexpected gain."[2]  (*Id.* at 5:3-21.)

5         The arguments strain credulity and do not persuade.  To accept Defendant's arguments, the

6    Court would have to ignore the sophistication of Khan's fraudulent and criminal scheme developed

7    as a result of his significant and professional background in finance and real estate.  Such a result

8    would serve the sole purpose of benefitting Khan (a defendant who argues that as of December 31,

9    2010, when the victim received the "unexpected gain" of $45,000, simultaneously possessed at a

10   minimum, bank accounts totaling $2,737,110.04) to the detriment of the victim.

11        Here, unlike the factual situation in *Herndon*, *supra*, the criminal conduct at issue directly

12   resulted in the loss to the victim.  E-Trade purchased the loan for $62,628, more than the outstanding

13   principal balance.[3]  It then advanced cash to Khan, which when not paid resulted in the outstanding

14   principal balance of $344,854.32.  These are real funds that E-Trade provided to Khan and Khan

15   then enjoyed and used to his benefit, including purchasing additional real estate.  This is not a

16   situation where a loan was bundled, sold, and purchased for a fraction of its worth, nor one where

17   the victim owns the collateral.  Here, Khan still owns the collateral, which is currently valued at

18   $327,618.  It is this property, which, in Khan's own words, he used to take "the equity out of [that]

19   principal residence and invest[] in two different properties to flip."  (Dkt. 38, Ex. 2.)  Had Khan not

20   manufactured the default status of the HELOC and then boldly falsified documents to further the

21   scheme, the HELOC would have been paid in full.

22        Accordingly, the **COURT FINDS** that E-Trade's business records and the declarations of the

23   account managers and employees are more than sufficient to establish (i) that E-Trade did suffer a

24   loss directly resulting from Khan's fraudulent conduct, and (ii) the appropriate amount due to E-

25   Trade compensate for the loss.  The Court therefore **ORDERS** restitution in the amount of

---

[2] Khan still owns the Appian Way property, which has an estimated value of $549,000 with a mortgage balance of $251,382 for a net value of $327,618.

[3] The Court declines to order restitution of E-Trade's cost in purchasing the loan of $2,628.

United States District Court
Northern District of California

**$313,665.98** payable to E-Trade through PNC's division CLC Consumer Services, which serviced the HELOC.[4]  While that amount does not include interest beyond January 2011, the Court has no evidence before it to increase the amount of prejudgment interest which would have been appropriate in this case.  The government shall provide a proposed form of judgment for the same.

This Order terminates Docket 58.

**IT IS SO ORDERED.**

Date: July 10, 2014

**HON. YVONNE GONZALEZ ROGERS**
**United States District Judge**

---

[4] The Court notes that the defendant has not renewed his objection to the entity through which E-Trade shall receive restitution and further finds that sufficient evidence has been provided for the payment to be made in this manner.